A. KRISTINA LITTMAN (NJ Bar No. 04350-2005)
STEVEN D. BUCHHOLZ (Cal. Bar No. 202638)
buchholzs@sec.gov
JOHN K. HAN (Cal. Bar No. 208086)
hanjo@sec.gov
ALICE L. JENSEN (Cal. Bar No. 203327)
jensena@sec.gov

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>Plaintiff,<br>v.<br>DAVID B. MATA,<br>Defendant. | Case No. 3:22-cv-2565 |

**JUDGMENT AS TO DEFENDANT DAVID B. MATA**

The Securities and Exchange Commission having filed a Complaint and Defendant David B. Mata ("Defendant") having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Judgment; waived findings of fact and conclusions of law; and waived any right to appeal from this Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of

interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a) to employ any device, scheme, or artifice to defraud;

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a) to employ any device, scheme, or artifice to defraud;

(b) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

III.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)] by, directly or indirectly, in the absence of any applicable exemption:

(a) Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(c) Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is permanently restrained and enjoined from violating Sections 206(1), (2) and (4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), (2) and (4)], and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8], by, directly or indirectly, by the use of any means or instrumentality of interstate commerce:

(a) employing any device, scheme, or artifice to defraud any client or prospective client;

(b) engaging in any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client;

(c) engaging in any act, practice, or course of business which is fraudulent, deceptive, or manipulative; or

(d) while acting as an investment adviser to a pooled investment vehicle:

1. making any untrue statement of a material fact or omitting to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; or

2. otherwise engaging in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

V.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], Defendant is permanently restrained and enjoined from directly or indirectly, including, but not limited to, through any entity owned or controlled by Defendant, participating in the issuance, purchase, offer, or sale of any securities, provided however, that such injunction shall not prevent Defendant from purchasing or selling securities for his own personal account.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of this Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a).

VI.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable for disgorgement of $75,000, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $11,624, for a total of $86,624. Defendant shall satisfy this obligation by paying $86,624 to the Securities and Exchange Commission within 30 days after entry of this Judgment.

Defendant may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

Enterprise Services Center
Accounts Receivable Branch
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; the Defendant's name as a defendant in this action; and specifying that payment is made pursuant to this Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant.

The Commission shall hold the funds (collectively, the "Fund") and may propose a plan to distribute the Fund subject to the Court's approval. The Court shall retain jurisdiction over the administration of any distribution of the Fund. If the Commission staff determines that the Fund will not be distributed, the Commission shall send the funds paid pursuant to this Judgment to the United States Treasury.

The Commission may enforce the Court's judgment for disgorgement and prejudgment interest by moving for civil contempt (and/or through other collection procedures authorized by law) as set forth in paragraph IX below. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

VII.

Upon motion of the Commission, the Court shall determine whether it is appropriate to order a civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)], and, if so, the amount of the civil penalty. In connection with the Commission's motion for a civil penalty, and at any hearing held on such a motion: (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of this Consent or the Judgment; (c) the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and

documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for a civil penalty, the parties may take discovery, including discovery from appropriate non-parties.

VIII.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the Complaint are true and admitted by Defendant, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under this Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

IX.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Judgment.

X.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Judgment forthwith and without further notice.

Dated: August 26, 2022

[signature]

UNITED STATES DISTRICT JUDGE

A. KRISTINA LITTMAN (NJ Bar No. 04350-2005)
STEVEN D. BUCHHOLZ (Cal. Bar No. 202638)
buchholzs@sec.gov
JOHN K. HAN (Cal. Bar No. 208086)
hanjo@sec.gov
ALICE L. JENSEN (Cal. Bar No. 203327)
jensena@sec.gov

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>Plaintiff,<br>v.<br>DAVID B. MATA,<br>Defendant. | Case No. CASE No. 3:22-cv-2565 |

**CONSENT OF DEFENDANT DAVID B. MATA**

1. Defendant David B. Mata ("Defendant") waives service of a summons and the Complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2. Defendant has entered into a written agreement to plead guilty to criminal conduct relating to certain matters alleged in the complaint in this action. Specifically, in *United States v. David B. Mata*, Crim. No. _______ (N.D. Cal.), Defendant has agreed to plead guilty to a violation of 18 U.S.C. § 1343 for wire fraud. In that plea agreement, Defendant admitted the facts set forth in Exhibit A to this Consent. This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *United States v. David B. Mata*, Crim. No. _______ (N.D. Cal.).

3. Defendant hereby consents to the entry of the Judgment in the form attached hereto (the "Judgment") and incorporated by reference herein, which, among other things:

(a) permanently restrains and enjoins Defendant from violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)]; Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), (2) and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8];

(b) permanently restrains and enjoins Defendant from directly or indirectly, including, but not limited to, through any entity owned or controlled by Defendant, participating in the issuance, purchase, offer, or sale of any securities, provided however, that such injunction shall not prevent Defendant from purchasing or selling securities for his own personal account;

(c) orders Defendant to pay disgorgement in the amount of $75,000, plus prejudgment interest thereon in the amount of $11,624; and

(d) orders that relief concerning a civil penalty will be resolved at a later time.

4. Defendant agrees that, upon motion of the Commission, the Court shall determine whether it is appropriate to order a civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)], and, if so, the amount of the civil penalty. Defendant further agrees that in connection with the Commission's motion for a civil penalty, and at any hearing held on such a motion: (a) Defendant will be

precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b) Defendant may not challenge the validity of this Consent or the Judgment; (c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for a civil penalty, the parties may take discovery, including discovery from appropriate non-parties.

5. Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

6. Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Judgment.

7. Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

8. Defendant agrees that this Consent shall be incorporated into the Judgment with the same force and effect as if fully set forth therein.

9. Defendant will not oppose the enforcement of the Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

10. Defendant waives service of the Judgment and agrees that entry of the Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within thirty days after the Judgment is filed with the Clerk of the Court, with

an affidavit or declaration stating that Defendant has received and read a copy of the Judgment.

11. Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding, and not the claims for relief for a civil penalty. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the Complaint in this action.

12. Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant acknowledges the guilty plea for related conduct described in paragraph 2 above, and: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis; (ii)

will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the Complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the Complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the Complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19). If Defendant breaches this agreement, the Commission may petition the Court to vacate the Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

13. Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

14. Defendant agrees that the Commission may present the Judgment to the Court for signature and entry without further notice.

15. Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Judgment.

Dated: April 27, 2022

David B. Mata

Approved as to form:

Grant P. Fondo, Esq.
David R. Callaway, Esq.
Goodwin Procter LLP
601 Marshall Street
Redwood City, CA 94063
Attorneys for Defendant

Dated:____________________ ________________________________
David B. Mata

Approved as to form:

David R. Callaway by Robert Tiefenbrun
Grant P. Fondo, Esq.
David R. Callaway, Esq.
Goodwin Procter LLP
601 Marshall Street
Redwood City, CA 94063
Attorneys for Defendant

# EXHIBIT A

Beginning in or around June 2017, Japheth Dillman and I came up with the idea to put together a fund, called Block Bits Fund, to trade cryptocurrency using an auto trader. The idea was to trade crypto currencies between exchanges to find arbitrage efficiencies and in turn generate a profit. At all relevant times, I was the co-managing director of Block Bits Fund. My role in Block Bits Fund was to manage the development of the technology behind the auto trader. This included hiring software developers and programmers to develop Block Bits Fund's auto trader. I had previously traded cryptocurrency manually, and I believed that if an auto trader could be developed, it could make a profit by automatically making arbitrage trades of different cryptocurrencies on various exchanges.

Shortly after we discussed the idea for a cryptocurrency auto trader, Dillman created and sent to me an investor "pitch deck," which falsely represented that the auto trader already existed and was functioning. For example, the pitch deck claimed that "We have seen an incredible increase in the performance of the auto-trader over letting the currency sit or be managed by hand." I knew at the time that this was false. Although I was trying to find a programmer who could develop an auto trader for us, there was no functioning auto trader when Dillman created and circulated the pitch deck soliciting investments, or when the fund was launched. In fact, the auto trader was never completed and never performed any trades. I kept Dillman updated on the lack of progress regarding the auto trader, but I did not stop him from providing the pitch deck to potential investors, even though I knew that no auto trader existed and that Dillman and I were still in the planning stages of the fund.

Throughout July and August 2017, Dillman used the "pitch deck" and other forms of communication to convey to investors and potential investors that the auto trader was functioning and making significant profits. For example, on July 9, 2017, Dillman emailed a

potential investor, copying me, and stated "we've built an auto trader that does arbitrage across the 30 different exchanges using multiple currencies. Our returns have been pretty mind boggling to date." Even though I knew at the time that this was false, I did not correct Dillman's false representations to investors and potential investors that there was a functional auto trader making successful trades.

At approximately the same time, I was using investor funds to make a few manual arbitrage cryptocurrency trades but there was no functioning auto trader. I knew at the time that the investor funds I was using to trade were invested based on the representation that there was a functioning auto trader, and that those funds were not intended to be used for manual cryptocurrency trading. I agree that I used interstate wire communications to carry out these trades.

In July or August 2017, Dillman suggested that we use 25 Bitcoin (which at the time was worth approximately $69,144.65) from investor funds to enter into a "cold storage" deal with an entity called Tixe, LLC ("Tixe I"). "Cold storage" is a phrase that refers to offline cryptocurrency storage. When cryptocurrency is in cold storage, that means it is not connected to the internet, and thus cold storage is very secure and low-risk. Based on what Dillman told me, I believed that we would provide Tixe with 25 Bitcoin, which Tixe would hold in a wallet offline for a set amount of time, after which Tixe would give 50 Bitcoin back to the fund. Dillman assured me that the deal was safe and I believed him. On August 1, 2017, Dillman sent an email to Block Bits investors stating that "We've struck a deal where 25 bitcoins were placed in cold storage for three months and we will receive 50 bitcoins at the end of the period. Without doing a single trade we already made 100% return on a portion of our cold storage!" I later learned that the 25 Bitcoin was used to invest in a startup and was not being held in cold storage. I told Dillman that

he needed to tell our investors that the money was not being held in cold storage, but they were never told. All of the 25 Bitcoin were lost.

There were two additional instances in which Block Bits Fund invested in startups, using funds that investors were led to believe were in cold storage. In August 2017, I sent approximately 13.835 Bitcoin (worth approximately $60,446 at the time) in investor funds to a cryptocurrency wallet controlled by a startup called AML Bitcoin. Those funders were to be were used to invest in the "Initial Coin Offering" ("ICO") of AML Bitcoin. To hide the fact from our investors that the fund was investing in an ICO, a fraudulent cold storage agreement with Tixe was created (known as the "Tixe II" deal). I knew at the time that the purpose of the Tixe II agreement was to deceive investors. The investors' funds were never returned.

In September 2017, Block Bits Fund provided $50,000 in U.S. currency to a startup called Aether United. The memo line of the check for $50,000 from Block Bits to Aether United read "cold storage." Aether United was a small company that I learned about because a friend of mine worked there. A "Service Level Agreement" was used to create the false impression that the money was being sent to Aether United for cryptocurrency cold storage. On August 20, 2017, Dillman falsely represented to investors that the $50,000 in investor funds was in risk-free cold storage with an anticipated high-yield return. I knew at the time that this was false, as Block Bits invested cash rather than cryptocurrency, and the money was being sent to a risky startup venture rather than being held in cold storage. Aether United failed as a company and Block Bits was only able to recover approximately $30,000.

In total, approximately $180,000 of Block Bits Fund investor funds went into the three deals that were falsely described to investors as "cold storage" deals.